Donald SCHOCKER, Appellant,

v.

STATE of Minnesota, DEPARTMENT
OF HUMAN RIGHTS, et al.,
Respondents.

No. C4–91–885.

Court of Appeals of Minnesota.

Nov. 26, 1991.

Review Denied Jan. 30, 1992.

Jack Cann, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Erica Jacobson, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by KLAPHAKE, P.J., and CRIPPEN and LOMMEN,* JJ.

## OPINION

KLAPHAKE, Judge.

Donald Schocker appeals from the judgment of dismissal for failure to state a claim upon which relief may be granted. Schocker contends he presented legally sufficient claims for alleged violations of the Data Practices Act, Minn.Stat. ch. 13 (1984), as well as alleged violations of his constitutional rights. We affirm.

## FACTS

In 1983, appellant Donald Schocker applied for, but did not obtain, a position with the George A. Hormel Company. In 1985, Schocker filed a charge with respondent Minnesota Department of Human Rights (the Department), alleging Hormel refused to employ him solely on the basis of his age. Schocker alleged Hormel refused to hire persons over age 45 as a matter of corporate policy. In its answer, Hormel denied any discriminatory practices, and attached data which according to Hormel disproved Schocker's claim.

On January 24, 1986, the Department dismissed Schocker's charge as without probable cause. The Department stated that Hormel had hired applicants over age 45, that no evidence indicated Hormel had considered Schocker's age or the ages of other applicants in its hiring decisions, and that Hormel had not hired other applicants who had the same evaluation rating as Schocker. Schocker requested reconsideration and also requested the data used to evaluate his charge. The Department refused to provide Schocker with a copy of the Hormel response, including the attachments, and reaffirmed its no probable cause decision. Five days after it reaffirmed the no probable cause determina-

tion, the Department provided Schocker with the Department's analysis of the Hormel data, but did not supply the data itself. Despite Schocker's continued requests, the Department did not provide the data until May of 1989.

On April 3, 1986, Schocker sued Hormel for age discrimination in Mower County. This action was subsequently dismissed without prejudice for failure to prosecute. In 1990, Schocker attempted to reopen the Mower County action, but the Mower County trial court determined the time lapse prejudiced Hormel and dismissed the action with prejudice for failure to prosecute. Schocker did not appeal that determination.

On August 21, 1990, Schocker brought the present action against the Department in Ramsey County. Schocker alleged that the Department violated his right to review the data attached to Hormel's response in violation of Minn.Stat. § 363.06, subd. 8 (Supp.1985), for which the Data Practices Act, Minn.Stat. § 13.08 (1984) (Data Practices Act), provided a remedy. Schocker also claimed the Department violated his right to equal protection and deprived him of due process in its handling of his charge. The trial court dismissed Schocker's action with prejudice, holding Schocker's complaint failed to state a claim upon which relief could be granted. Schocker appeals from the judgment.

## ISSUES

I. Does the Data Practices Act, Minn. Stat. ch. 13 (1984), provide a remedy for a violation of the Minnesota Human Rights Act, Minn.Stat. § 363.06, subd. 8 (Supp.1985)?

II. Did the complaint set out factually and legally sufficient claims for a violation of Schocker's constitutional rights?

## ANALYSIS

*Standard of Review*

■ The trial court dismissed Schocker's action against the Department for failure

---

* Retired judge of the district court acting as judge of the Court of Appeals by appointment pursu-

ant to Minn. Const. art. VI, § 2.

to state a claim upon which relief may be granted. *See* Minn.R.Civ.P. 12.02. On appeal, our sole determination is whether the complaint stated a legally sufficient claim for relief. *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980). We assume the allegations in the complaint are true. *Id.* at 33. "[A] pleading will be dismissed only if it appears to a certainty that no facts * * * exist which would support granting the relief demanded." *Northern States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963) (footnote omitted). In addition, where the complaint alleges constitutional violations, a rule 12 motion is subject to increased scrutiny to protect the public from "possible government overreaching." *Elzie*, 298 N.W.2d at 32. Thus, when the plaintiff alleges a constitutional error, a rule 12 dismissal is proper only when the defendant "demonstrate[s] the *complete frivolity* of the complaint." *Id.* at 33 (emphasis in original).

## I.

Two sections of the Human Rights Act address access to the data contained in the Department's case files. Section 363.06, subd. 8 (Supp.1985) states:

> The commissioner shall provide the respondent with a copy of the charge. The charging party * * * may review the answer of the respondent to the charge * * * *The department shall make these documents available to the charging party.*

(Emphasis added). Section 363.061, subd. 1 (Supp.1985) provides:

> Notwithstanding section 13.39 and *except as provided in section 363.06, subdivisions 6 and 8*, the availability of human rights investigative data to persons other than department employees is governed by this section.

(Emphasis added). Section 363.061 then classifies the Department's investigative data according to the classifications found in the Data Practices Act. Minn.Stat. §§ 363.061; 363.01, subd. 36 (Supp.1985).

The trial court noted that Schocker's claim arose out of a violation of section 363.06, subd. 8, and referred to the data classifications found in section 363.061 to determine whether Schocker had a right to the data. In essence, the trial court incorporated the provisions of section 363.061 into section 363.06, subd. 8 to determine whether Schocker presented a viable claim. Because Schocker did not have a right to the data under any of the section 363.061 classifications, the trial court concluded Schocker failed to state a claim against the Department.

Schocker contends that section 363.06, subd. 8 stands apart from section 363.061 in giving him a right to the data and that the data practices classifications have no bearing on an alleged violation of section 363.06, subd. 8. Schocker further argues that the Data Practices Act provides a remedy for a violation of section 363.06, subd. 8.

We agree that the data classifications found in section 363.061 do not affect Schocker's right to review the Hormel response, including the attached data, under section 363.06, subd. 8. Section 363.061 explicitly states that it governs access to human rights investigative data *except* as provided in section 363.06, subd. 8. Section 363.06, subd. 8 states that the charging party "may" review the respondent's answer and states that the Department "shall" make the documents comprising the answer available to the charging party.[1] Application of the general rules of statutory construction to this section indicates that the charging party has the option of reviewing the respondent's answer and

---

1. The Department claims that materials appended to the answer are not necessarily a part of the answer. We disagree. The statute uses "answer" and "documents" synonymously, clearly indicating that the answer may consist of more than a bare denial. Minn.Stat. § 363.06, subd. 8 (Supp.1985). The statutory language recognizes that the answer may include both a general response to the charge as well as evidence disproving or otherwise addressing the charged discriminatory acts. To limit the charging party's access to the "formal" answer alone without access to the accompanying documents upon which the answer is based defeats the purpose of giving the charging party a right to review the answer.

that, if the charging party exercises its right to so review the answer, the Department must make those documents available. *See* Minn Stat. § 645.44, subds. 15, 16 (1990) (" 'May' is permissive;" " 'shall' is mandatory"). Section 363.06, subd. 8 does not limit, expressly or by implication, the charging party's access to the answer according to the data practices classifications. Thus, Schocker had a right to review Hormel's answer, including the attached data, regardless of whether he would otherwise have a right to the data under section 363.061.

Having determined that the Department violated Schocker's right to review the Hormel data, however, we must next determine what remedy is available for a violation of section 363.06, subd. 8. Schocker claims the Data Practices Act remedy allows him to sue the Department for damages and injunctive relief. We disagree.

■ The legislature may choose to bring a statute within the ambit of the Data Practices Act. *See* Minn.Stat. §§ 363.061 (Supp.1985); 626.556, subd. 11 (1990). Our reading of the statutes here, however, reveals no indication that the legislature intended the Data Practices Act to apply to section 363.06, subd. 8. Section 363.06, subd. 8 makes no reference to the Data Practices Act.[2] The Data Practices Act specifically limits application of its civil remedies provision to violations or proposed violations of the Data Practices Act. *See* Minn.Stat. § 13.08, subds. 1, 2, 4 (1984) (actions for damages or injunctive relief may be brought against government entity violating or proposing to violate provisions of "this chapter"). In the absence of legislative language to bring section 363.06, subd. 8 within the purview of the Data

Practices Act, we decline to read such an intent into the statute.

■ We believe Schocker's proper remedy was to obtain a writ of mandamus at the time the Department refused to comply with section 363.06, subd. 8. In addition, the Hormel data was surely subject to discovery in Schocker's civil action. Schocker neither obtained a writ of mandamus nor made discovery requests for the data.[3] The failure to obtain the data, therefore, rests in part with Schocker. We conclude the trial court did not err in dismissing Schocker's action for a violation of the Data Practices Act because no facts exist which would support granting the relief demanded.

II.

■ A valid due process claim depends on whether Schocker "was deprived of a protected interest and, if so, what process was his due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). A protected property interest is created when the governing state law gives an individual an "entitlement" that is only removable for cause. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978). The Human Rights Act entitles Schocker to have the Department process his charge, and that right is only terminable upon a finding of no probable cause. *See* Minn.Stat. § 363.-06, subd. 4 (1984) ("[T]he commissioner shall promptly inquire into the truth of the allegations of the charge."). *See also Logan*, 455 U.S. at 429–31, 102 S.Ct. at 1154–55 (holding Illinois statute created a pro-

2. Compare *Koudsi v. Hennepin County Medical Center*, 317 N.W.2d 705 (Minn.1982) (holding Data Practices Act inapplicable to Patient's Bill of Rights, Minn.Stat. ch. 144 (1980), because neither the statute nor case law applied the data practices classifications to the Patient's Bill of Rights) *with Nelson v. Ninneman*, 373 N.W.2d 373 (Minn.App.1985) (applying the Data Practices Act to Minn.Stat. ch. 626 (1984) because statute specifically stated that reports "shall be collected and maintained" according to the Data Practices Act, and that the subject of the report

"shall have access to the record in accordance with" the Data Practices Act).

3. The record indicates that Schocker made repeated inquiries to his attorneys regarding the status of his claim with the Department and was told the delay was typical of agency proceedings. Following the Department's no probable cause determination, Schocker filed a civil suit against Hormel which was later dismissed for failure to prosecute, despite Schocker's continued inquiries to his attorneys as to the status of the civil action.

tected entitlement in an agency's adjudicative machinery); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) (holding a cause of action to be a protected property interest). Schocker argues that the Department's refusal to provide the Hormel data deprived him of his right to use the Department's adjudicative machinery. We disagree.

Schocker analogizes this case to the due process issue considered in *Logan.* There, Logan's Illinois Fair Practice Commission claim was dismissed before any hearing on the merits because the agency failed to schedule a fact-finding conference within the prescribed time period. *Logan,* 455 U.S. at 426, 102 S.Ct. at 1152. Additionally, Logan had no right of judicial or agency appeal. *Id.* at 424–27, 102 S.Ct. at 1151–53. The Supreme Court held that the Illinois statute created a property interest in the agency's adjudicatory machinery that the state could not remove without due process. *Id.* at 429–31, 102 S.Ct. at 1154–55. The Court concluded that the state, having given Logan a protected interest in an agency's adjudicative process, could not deprive him of that adjudicative process without giving him a meaningful opportunity to be heard.[4] *Id.* at 437, 102 S.Ct. at 1158–59.

Unlike Logan, Schocker received a hearing on the substantive merits of his claim. The Department investigated his charge and issued a no probable cause finding based on the merits of his claim. The Department later reconsidered the claim and reaffirmed its determination of no probable cause. We recognize that the Department's refusal to provide the Hormel data may have prevented Schocker from rebutting the data, but the Department's action did not deprive Schocker of an opportunity to be heard on the merits of his claim. In addition, as we noted earlier, Schocker also failed to obtain a writ of mandamus to enforce his right to review Hormel's answer. While we do not condone the Department's actions here, we conclude Schocker received an adequate opportunity to be heard. Accordingly, we affirm the trial court's determination that Schocker failed to state a claim upon which relief may be granted.

## DECISION

Affirmed.

---

4. The Court acknowledged that the state may construct reasonable procedural requirements that terminate a claim for failure to comply, such as a statute of limitation. *Logan v. Zim-* *merman Brush Co.*, 455 U.S. 422, 434 n. 7, 437, 102 S.Ct. 1148, 1157 n. 7, 1158, 71 L.Ed.2d 265 (1982).